**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| CLAUDIO A. CASTILLO,<br> Appellant, | DOCKET NUMBER<br>AT-1221-22-0417-W-1 |
| v. | |
| U.S. AGENCY FOR GLOBAL MEDIA,<br> Agency. | DATE: October 21, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Georgia A. Lawrence, Esquire, and Shaun C. Southworth, Esquire, Atlanta, Georgia, for the appellant.

Samantha R. Duncan and Brooks Anderson, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication of this appeal.

### FINAL ORDER

¶1  The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA)

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to find that the appellant did not make a nonfrivolous allegation that his August 2021 OIG complaint was a contributing factor in his letter of reprimand and that he established that he engaged in protected activity with respect to his August 2021 OIG complaint but failed to establish that it was a contributing factor in his proposed removal, we AFFIRM the initial decision.

## BACKGROUND

The appellant, a GS-12 Television Broadcast Technician, was previously employed with the agency's Office of Cuba Broadcasting (OCB) in Miami, Florida, until he retired, effective February 26, 2022. *Castillo v. U.S. Agency for Global Media*, MSPB Docket No. AT-1221-22-0417-W-1, Initial Appeal File (IAF), Tab 6 at 6; *Castillo v. U.S. Agency for Global Media*, MSPB Docket No. AT-0752-22-0263-I-1, Initial Appeal File (0263 IAF), Tab 9 at 14. Beginning in May 2021, the appellant began expressing dissatisfaction with OCB's decisions to move work from full-time employees to contractors, cancel projects, focus on what he believed were the wrong stories, and change the

manner through which it distributed information to Cuba. IAF, Tab 6 at 13, 22-26. In doing so, he criticized OCB leadership, stating things like, "[t]hank God for our consistent incompetence," making references to the agency's "total misguided leadership," and alleging that "we are making fools of ourselves again." *Id*. at 22-23. The appellant alleged that on August 6, 2021, he filed a complaint with the agency's Office of Inspector General (OIG). IAF, Tab 7 at 12. On August 10, 2021, the appellant's first-level supervisor issued him a letter of reprimand for some of the aforementioned comments and for using inappropriate language in front of the OCB Director when he called his manager a "fucking lunatic." IAF, Tab 43-45. In October 2021, the appellant participated in an OIG interview concerning journalistic standards and editorial independence. IAF, Tab 31 at 29-32. Subsequently, on January 5, 2022, the agency proposed the appellant's removal based on charges of disrespectful behavior (7 specifications) and lack of candor (1 specification). IAF, Tab 14 at 5-10. In lieu of submitting a response to the proposed removal, the appellant retired effective February 26, 2022. 0263 IAF, Tab 9 at 14.

¶3 After receiving a close-out letter from the Office of Special Counsel (OSC), the appellant filed a Board appeal alleging that his letter of reprimand and proposed removal constituted reprisal for his protected disclosures beginning in May 2021, his protected activity of filing an OIG complaint in August 2021, and participating in an OIG interview in October 2021. IAF, Tab 1 at 4. The administrative judge thereafter issued an order setting forth the appellant's burden to establish jurisdiction over his appeal. IAF, Tab 3. After considering the parties' responses, the administrative judge issued an order on jurisdiction, finding that the appellant had failed to nonfrivolously allege that he had made protected disclosures with respect to his May 13 and July 16, 2021 emails. IAF, Tab 15 at 4-7. The administrative judge also found that the appellant had nonfrivolously alleged that he had engaged in protected activity with respect to his August 2021 OIG complaint and his participation in the October 2021 OIG

interview, but failed to nonfrivolously allege that they were a contributing factor in his letter of reprimand. *Id*. at 7-9. Lastly, he found that the appellant nonfrivolously alleged that his protected activity was a contributing factor in his proposed removal. *Id*. at 10. After holding a hearing, the administrative judge issued an initial decision, denying the appellant's request for corrective action, finding that the agency proved by clear and convincing evidence that it would have proposed the appellant's removal regardless of his October 2021 OIG interview, but the administrative judge did not consider the appellant's August 2021 OIG complaint. ID at 1, 13.[2]

¶4    The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has opposed the appellant's petition. PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>We agree with the administrative judge that the appellant did not make a nonfrivolous allegation that his August 2021 OIG complaint was a contributing factor in his letter of reprimand, but modify his analysis to consider evidence other than the knowledge/timing test.</u>

¶5    The Board has jurisdiction over an IRA appeal if the appellant has exhausted his remedies before OSC and makes nonfrivolous allegations that: (1) he made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision

---

[2] Two weeks before filing his initial appeal in this matter, the appellant filed an involuntary retirement appeal with the Board's regional office, *Castillo v. U.S. Agency for Global Media*, MSPB Docket No. AT-0752-22-0263-I-1. The administrative judge determined that there was "significant overlap in the factual basis" of those pending matters and that the parties had submitted relevant evidence "across both dockets." ID at 1 n.1. The administrative judge found it appropriate to join the appeals for a hearing, but he issued a separate initial decision in each appeal. *Id.*; *Castillo v. U.S. Agency for Global Media*, MSPB Docket No. AT-0752-22-0263-I-1, Initial Decision (July 19, 2023). The appellant filed a separate petition for review of each initial decision, and the Board has issued separate final decisions in these appeals. *Castillo v. U.S. Agency for Global Media*, MSPB Docket No. AT-0752-22-0263-I-1, Final Order (Oct. 9, 2024).

to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 5.

¶6      An appellant's protected activity is a contributing factor if it in any way affects an agency's decision to take, or fail to take, a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). One way an appellant may establish the contributing factor criterion is the knowledge/timing test, under which he submits evidence showing that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 63. The Board has held that a personnel action taken within approximately 1 to 2 years of an appellant's disclosures or activity satisfies the timing portion of the knowledge/timing test. *Id.* If an administrative judge determines that an appellant has failed to satisfy the knowledge/timing test, he shall consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the officials taking the action, and whether these individuals had a desire or motive to retaliate against the appellant. *Dorney*, 117 M.S.P.R. 480, ¶ 15.

¶7      On review, the appellant argues that the administrative judge failed to consider his August 6, 2021 communication or complaint to the agency's OIG, and the August 10, 2021 letter of reprimand he received.[3] PFR File, Tab 1 at 5, 8. In the administrative judge's jurisdiction order, which he incorporated by reference in his initial decision, the administrative judge found that the appellant made a nonfrivolous allegation that he engaged in protected activity with respect

_____

[3] The appellant, who was represented by counsel below and on review, does not specifically challenge the administrative judge's remaining jurisdictional findings, including that the appellant did not make a nonfrivolous allegation that his May 13, 2021 and July 16, 2021 communications were protected disclosures. PFR File, Tab 1 at 5, 8; IAF, Tab 15 at 5-7. Therefore, we will not revisit those communications here.

to his August 6, 2021 complaint to the agency's OIG and that he had exhausted that complaint and the letter of reprimand with OSC. IAF, Tab 15 at 2, 7; Tab 7 at 12; ID at 2-4. Because neither party challenges that finding, and we find it supported by the record, we decline to disturb it. The administrative judge also found that the appellant did not make a nonfrivolous allegation that his August 6, 2021 protected activity was a contributing factor in the decision to issue him a reprimand. IAF, Tab 15 at 9-10. In so finding, he reasoned that the appellant had not provided a factual basis to conclude that the official who issued the letter of reprimand, i.e., the appellant's first-line supervisor, had any knowledge of the appellant's contact with the agency's OIG in August 2021. *Id*. at 9. However, the administrative judge did not consider evidence other than the knowledge/timing test. *Id*. Therefore, we modify the initial decision to address evidence other than the knowledge/timing test with respect to the letter of reprimand, but we still find no reason to disturb the administrative judge's finding that the appellant failed to nonfrivolously allege that his August 2021 OIG complaint was a contributing factor in his letter of reprimand.

¶8      With respect to the knowledge/timing test, the administrative judge found that the exact date of the August 2021 OIG complaint was unsupported by any sworn statement in the record. IAF, Tab 15 at 7. We disagree. In the appellant's OSC complaint, which he submitted with his jurisdictional response and certified to the truthfulness of its statements, the appellant states that his OIG complaint was made on August 6, 2021. IAF, Tab 7 at 12. Therefore, the appellant's August 10, 2021 letter of reprimand satisfies the timing portion of the knowledge/timing test. However, we agree with the administrative judge that the appellant ultimately did not allege, either below or on review, that his first-level supervisor, who issued him the letter of reprimand, had any actual or constructive knowledge that the appellant made an OIG complaint before issuing him the letter of reprimand. IAF, Tab 6 at 16.

¶9     Next, we consider evidence other than knowledge/timing evidence. First, we find the evidence pertaining to the strength of the agency's reasons for issuing the letter of reprimand is strong. At a minimum, it is undisputed that on July 15, 2021, the appellant approached the newly appointed OCB Director and twice referred to the Editor in Chief as a "lunatic." IAF, Tab 6 at 28, Tab 10 at 34. Although the appellant denied that he used the phrase "fucking lunatic," as alleged in the letter of reprimand, he admitted he used the word "lunatic." IAF, Tab 6 at 28. We find that that statement alone is sufficient reason for the agency to issue the appellant a letter of reprimand. Secondly, although the appellant's August 6, 2021 OIG complaint is not in the record, the appellant has not alleged below or on review that his first-level supervisor, who issued the letter of reprimand, was personally implicated in that complaint. To the contrary, in his sworn statement submitted with his jurisdictional response, the appellant claims that, in his August 2021 OIG complaint, he disclosed "gross mismanagement, fraud, waste, abuse, and danger to public safety," including that "the employees within the graphic department and the anchor men/women in place were being paid and the work was not being done," and that "there were false report about reports being live which was not the case." IAF, Tab 6 at 16. In this statement, he attributes those alleged wrongdoings to the newly appointed OCB Director, "other heads of the department," and the Editor in Chief, but not specifically his first-level supervisor. *Id*. at 14, 16. The appellant also has not alleged that either the OCB Director or the Editor in Chief were involved in the decision to issue him a letter of reprimand. Lastly, the appellant has not alleged below or on review specific facts from which one could conclude that his first-level supervisor harbored any retaliatory motive against him for his August 2021 OIG complaint. Thus, we agree with the administrative judge's determination that the appellant has not made a nonfrivolous allegation that his August 2021 OIG complaint was a contributing factor in the agency's decision to issue him a letter of reprimand.

<u>We agree with the administrative judge that the appellant established a prima facie case of whistleblowing reprisal and that the agency proved by clear and convincing evidence that it would have proposed the appellant's removal notwithstanding his whistleblower activity, and modify his analysis here.</u>

¶10  As noted above, in his jurisdictional order, the administrative judge found that the appellant made a nonfrivolous allegation of protected activity with respect to the appellant's August 2021 OIG complaint; however, in his initial decision, he did not address this protected activity in his findings that the appellant established a prima facie case of whistleblowing reprisal and that the agency established by clear and convincing evidence that it would have taken the same personnel action in the absence of his protected activity. IAF, Tab 15 at 7; ID at 4-13. Therefore, we modify the administrative judge analysis to address it here.

> *The appellant proved by preponderant evidence that he engaged in protected activity under 5 U.S.C. § 2302(b)(9).*

¶11  Under 5 U.S.C. § 2302(b)(9)(C), it is a prohibited personnel practice to take an action against an employee because that employee "disclos[ed] information to the Inspector General . . . of an agency, or the Special Counsel, in accordance with applicable provisions of law." The administrative judge correctly found, and the parties do not dispute on review, that the appellant engaged in protected activity under 5 U.S.C. § 2302(b)(9) with respect to his participation in an interview with the OIG in October 2021. ID at 4. We also find that the appellant engaged in protected activity under 5 U.S.C. § 2302(b)(9) with respect to his August 2021 OIG complaint.[4] *See Pridgen*, 2022 MSPB 31, ¶ 62 (clarifying that, under 5 U.S.C. § 2302(b)(9)(C), any disclosure of information to OSC or OIG is protected, regardless of the content). Thus, we find that the appellant established

---

[4] Although the appellant's August 2021 OIG complaint is not in the record, it appears to be separate and unrelated to the October 2021 OIG interview, which concerned journalistic standards and editorial independence arising from reports that occurred prior to the events at issue in this appeal. IAF, Tab 10 at 50-55.

that he engaged in protected activity with respect to his August 2021 OIG complaint and October 2021 OIG interview.

> *The appellant proved by preponderant evidence that his October 2021 OIG interview was a contributing factor in his proposed removal, but not his August 2021 OIG complaint.*

¶12 As mentioned above, an appellant may establish the contributing factor criterion through the knowledge/timing test, or if an administrative judge determines that an appellant has failed to satisfy the knowledge/timing test, he shall consider the *Dorney* factors. *Pridgen*, 2022 MSPB 31, ¶ 63; *Dorney*, 117 M.S.P.R. 480, ¶ 15. Neither party disputes the administrative judge's finding that the appellant proved that his October 2021 OIG interview was a contributing factor in his proposed removal under the knowledge/timing test, and we find that the record supports it. ID at 5-6; PFR File, Tab 4 at 9. Therefore, we modify the administrative judge's analysis to address whether the appellant established that his August 2021 OIG complaint was a contributing factor in his proposed removal, but we ultimately find that the appellant did not.

¶13 Here, the appellant's August 6, 2021 OIG complaint occurred 5 months before his January 5, 2022 proposed removal, and therefore, satisfies the timing portion of the knowledge/timing test. However, the proposing official, i.e., the appellant's first-line supervisor, testified during the hearing that he was not aware that the appellant contacted the agency's OIG. IAF, Tab 37-1, HT at 2:07 (testimony of the proposing official). There is no allegation or evidence in the record or on review directly contradicting this testimony. Thus, we find that the appellant has not satisfied the knowledge portion of the knowledge/timing test.

¶14 Next, we consider evidence other than knowledge/timing evidence. Here, the appellant has not alleged, much less established, that the August 2021 OIG complaint was personally directed at his first-level supervisor who proposed his removal, nor has he alleged or established that his first-level supervisor harbored retaliatory animus against him because of that complaint. Also, for the reasons

stated in the initial decision and in the initial decision of the 0263 initial appeal, we agree with the administrative judge's determination that the agency's evidence supporting the proposed removal is strong. ID at 7-11; *Castillo v. U.S. Agency for Global Media*, MSPB Docket No. AT-0752-22-0263-I-1, Initial Decision (0263 ID) at 5-8 (July 19, 2023). For example, with respect to the first charge of disrespectful behavior towards his supervisor, the agency alleges in seven specifications that the appellant acted disrespectfully towards his first-level supervisor in multiple emails from September 20 through September 23, 2021, after he had already been reprimanded for his tone. IAF, Tab 6 at 33-36. A review of those emails shows that the appellant was disrespectful, sarcastic, and hostile toward his first-level supervisor in each communication. 0263 IAF, Tab 14 at 27-30, 33, 37, 39. Indeed, the appellant submitted emails from his union representative "strongly advis[ing] [him] against using certain language, comments, sarcasm etc." in many of the emails he wrote to management, but he chose to do so anyway. 0263 IAF, Tab 4 at 29. Furthermore, during the hearing, the appellant did not deny the existence or tone of these emails and admitted they were aggressive, and thus admitted the substance of the first charge. ID at 7.

¶15    On review, the appellant does not deny that he engaged in the charged misconduct for the first charge, but instead, he generally argues that the administrative judge failed to consider that his supervisor provoked his disrespectful conduct because he was being unjustly treated by the agency. PFR File, Tab 1 at 6-7; ID at 7, 11. However, the administrative judge considered and rejected this argument, noting that the appellant's disciplinary history, including his 2-day suspension in 2013 for inappropriate and disrespectful conduct towards the then-OCB Director and misrepresentation of facts during an investigation, as well as his August 2021 letter of reprimand for using inappropriate language with the current OCB Director, belies his excuse that his inappropriate emails were provoked by the agency's mistreatment, and instead, it demonstrate a pattern of repeated disrespectful behavior. ID at 10-11. We find no reason to disturb this

finding. *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (finding that there is no reason to disturb the administrative judge's conclusions when the initial decision reflects that he considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

¶16     With respect to the second charge alleging that the appellant lacked candor when he emailed his supervisor falsely alleging that he had not received an email with an assignment, the appellant argues that the administrative judge erred in crediting the testimony of two information technology (IT) professionals who testified regarding the appellant's receipt of the email. PFR File, Tab 1 at 6; ID at 8-9. He argues that the metadata provided with the proposed removal suggests that the agency's Human Resources (HR) employee, J.C., who had access to his emails, deleted the email in question. PFR File, Tab 1 at 6. The administrative judge, however, considered and rejected the appellant's version of events as improbable, noting that, for the appellant's allegations to be true, J.C. would have had to have known that the appellant would be sent a specific email, delete that email before the appellant saw it, and foreseen that the appellant would have sent his first-line supervisor a preemptive email accusing him of preparing to write a "disciplinary memo[] with false accusations" based on the perceived failure to receive the email. ID at 9. Instead, he credited the testimony of the two IT professionals who testified that the email system had been working that day and that the appellant received the email at issue. ID at 8-9. He further credited the testimony of one of those IT professionals, the agency's primary email administrator, who testified that the server logs showed that seven to eight emails were deleted from the appellant's account. 0263 ID at 6. Although he could not confirm with absolute certainty that the appellant, and not J.C., had deleted the email, he credibly testified that a Washington, D.C. IP address connected to the deletion did not evidence that someone other than the appellant deleted the email, explaining that OCB's system was connected to the agency's

headquarters in Washington, D.C. ID at 9. Thus, an internal IP address appearing to originate in Washington, D.C. could still have originated in Miami, Florida because OCB's internet traffic was also routed through servers in Washington, D.C. 0263 ID at 7. Moreover, he found credible the IT professional's explanation that it was likely J.C. was given access to the appellant's email in connection with the investigation into the charged conduct, as agency HR employees and management are authorized to ask for such access. *Id*. Because the administrative judge determined that the basis of the charge was the appellant's false representation he never received the email, and the deletion of the email was peripheral to the charge, he found that the agency had valid reasons for the lack of candor charge in the proposed removal. 0263 ID at 7. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Here, the administrative judge's credibility determinations were based on his observation and assessment of the agency officials' demeanor during the hearing. *See Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372-73 (Fed. Cir. 2016) (stating that, even if demeanor is not explicitly discussed by an administrative judge, assessing a witness's credibility involves consideration of various factors, including a witness's demeanor). Although the appellant disagrees with the credibility determinations, we find his challenges are not sufficiently sound to overturn them. Thus, we find that the appellant has not established that his August 2021 OIG complaint was a contributing factor in his proposed removal. Therefore, he has only established that his October 2021 OIG interview was a contributing factor in his proposed removal.

> *The agency proved by clear and convincing evidence that it would have removed the appellant notwithstanding the appellant's October 2021 OIG interview.[5]*

¶17      On review, the appellant generally challenges the administrative judge's finding that the agency proved by clear and convincing evidence that it would have proposed the appellant's removal notwithstanding his participation in the October 2021 OIG interview. PFR File, Tab 1 at 5; ID at 6-13. The administrative judge's findings are well reasoned and supported by the record; thus, we decline to disturb them.

¶18      In *Carr v. Social Security Administration*, 185 F.3d 1318, 1323, the U.S. Court of Appeals for the Federal Circuit set forth a number of factors the Board should consider in determining whether the agency met its burden of proving by clear and convincing evidence that it would have taken the challenged action in the absence of the appellant's protected whistleblowing activity, including the following: (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).

---

[5] The administrative judge appears to have applied the preponderant evidence standard in finding that the agency proved its charges, rather than a clear and convincing evidence standard. ID at 9. Nevertheless, because we discern no error with the administrative judge's analysis or finding that the agency had strong evidence in support of its decision to propose the appellant's removal, we find that any such error in identifying the standard is harmless. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

¶19 Regarding the first *Carr* factor, i.e., the strength of the agency's evidence in support of its action, for the reasons stated in the initial decision and discussed above, we agree with the administrative judge's finding that the agency had sufficiently strong evidence to support the proposed removal. ID at 7-11. This is especially true in light of the appellant's prior discipline and pattern of engaging in similar misconduct, including his August 2021 letter of reprimand for repeatedly using inappropriate language in his communications with management and his 2-day suspension in July 2013 for disrespectful behavior towards another OCB Director. 0263 IAF, Tab 17 at 4-8, 11-13. Accordingly, this factor weighs in favor of the agency.

¶20 Regarding the second *Carr* factor, i.e., the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision, for the reasons stated in the initial decision, we find no reason to disturb the administrative judge's findings that agency officials involved in the proposed removal had little motive to retaliate against the appellant. ID at 11-12. The administrative judge credited the testimony of the OCB Deputy Director, who was designated as the deciding official in the appellant's proposed removal, and testified that the OIG interview concerned journalistic standards and editorial independence arising from reports that occurred years earlier in October 2020 and that he had suggested that OIG interview the appellant along with most of his coworkers. ID at 11; IAF, Tab 31 at 29-32. The administrative judge reasoned that it makes little sense for agency managers to harbor retaliatory motive towards the appellant for participating in an investigation when they themselves suggested he participate. ID at 11. Also, the appellant has neither alleged nor presented evidence that the appellant's coworkers, who were also interviewed, were retaliated against or that he played an important role that was distinguishable to his coworkers. ID at 11-12. Accordingly, this factor weighs in favor of the agency.

¶21     Regarding the third *Carr* factor, i.e., evidence that the agency takes similar actions against employees who did not engage in protected whistleblower activity but are otherwise similarly situated, the appellant does not specifically challenge the administrative judge's finding that this factor is neutral. ID at 12-13. For the reasons stated in the initial decision, we agree that this factor is neutral.

¶22     Ultimately, considering the above factors and the record as a whole, particularly in light of the fact that the appellant had been disciplined twice before for similar misconduct, we agree that the agency proved by clear and convincing evidence that it would have proposed the appellant's removal absent his protected activity. *See Carr*, 185 F.3d at 1326 (noting that the whistleblower protection statutes are "not meant to protect employees from their own misconduct").[6] Accordingly, we affirm the initial decision.

## NOTICE OF APPEAL RIGHTS[7]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and

---

[6] Lastly, the appellant argues that the administrative judge failed to consider that the proposed removal was part of a campaign to coerce him to retire that included misleading him or failing to correct his erroneous belief that he would lose his pension and retirement benefits if he was removed. PFR File, Tab 1 at 7-8. In the appellant's 0263 appeal, the administrative judge dismissed the appellant's involuntary retirement claim for lack of jurisdiction, finding that the appellant did not establish that his retirement was the product of coercion or misinformation. 0263 ID at 1, 8, 14. We affirmed that decision. *Castillo*, AT-0752-22-0263-I-1, Final Order at 1-2. Thus, because a voluntary retirement is not a personnel action as defined under 5 C.F.R. § 1209.4(a), the administrative judge properly did not consider it.

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of the <u>date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:　　　　　_____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.